<br>

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **Kenneth Banks** | : | CASE NO. 1:20-cv-02026 |
| 6310 Stoneridge D108 | : | |
| Pleasanton, CA 94588 | : |  JUDGE SOLOMON OLIVER, JR. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **Foundation Automotive Corp.** | : | **FIRST AMENDED COMPLAINT** |
| 211 Highland Cross Drive, Suite #260 | : | |
| Houston, TX 77073 | : | **(Jury Demand Endorsed Hereon)** |
| | : | |
| **Foundation Auto Holdings, LLC** | : | |
| c/o Corporate Creations Network Inc. | : | |
| 3411 Silverside Road | : | |
| Tatnall Building Suite 104 | : | |
| Wilmington, DE 19810 | : | |
| | : | |
| **Kevin Kutschinski** | : | |
| Unknown Address | : | |
| | : | |
| **Chuck Kramer** | : | |
| 20722 Bending Pines Lane | : | |
| Spring, TX 77379 | : | |
| | : | |
| **Motorcars Honda** | : | |
| 2953 Mayfield Rd. | : | |
| Mayfield Heights, OH 44118, | : | |
| | : | |
| **Charles Gile** | : | |
| 110 Ashleigh Dr. | : | |
| Chagrin Falls, OH 44022 | | |

1

**Trevor Gile**                           :
110 Ashleigh Dr.                          :
Chagrin Falls, OH 44022                   :
                                          :
          Defendants.                     :
                                          :
                                          :
                                          :

Plaintiff, Kenneth Banks ("Banks"), for his Amended Complaint against Defendants, Foundation Automotive Corp., Foundation Auto Holdings, LLC (jointly with Foundation Automotive Corp., "Foundation"), Kevin Kutschinski ("Kutschinski"), Chuck Kramer ("Kramer"), Motorcars Honda, Charles "Chuck" Gile, and Trevor Gile (collectively "Defendants"), states and alleges as follows:

**INTRODUCTION**

1.      Banks is an individual and resident of Pleasanton, California, is in a protected category based on his disability pursuant to Ohio Revised Code (R.C.) § 4112.02 and was a joint employee of Foundation and Motorcars Honda from January 7, 2019 to March 7, 2019.

2.      Foundation Automotive Corp. is an automotive dealership engaged in the business of selling new and used automobiles. Upon information and belief, Foundation Automotive Corp. is a Canadian corporation with its headquarters in Houston, Texas. At all times relevant, Foundation Automotive Corp. was in the process of purchasing two dealerships in Cleveland, Ohio and does business in Cuyahoga County, Ohio.

3.      Upon information and belief, Foundation Auto Holdings, LLC is a Delaware limited liability company and a subsidiary of Foundation Automotive Corp.

4.      Upon information and belief, Kutschinski is an individual and resident of Canada. Kutschinski is the President and an employee of Foundation.

5.      Upon information and belief, Kramer is an individual and resident of Texas. Kramer is the Chief Operating Officer and an employee of Foundation.

6.      Motorcars Honda is the registered trade name of Motor Cars, Inc., an Ohio corporation that is headquartered in Cleveland, Ohio and does business in Cuyahoga County, Ohio. Motorcars Honda is an auto dealership engaged in the business of selling new and used automobiles in Cleveland Heights, Ohio.

7.      Upon information and belief, Charles "Chuck" Gile is an individual and resident of Cuyahoga County, Ohio. At all times relevant, Chuck Gile was the co-owner of Motorcars Honda with Trevor Gile.

8.      Upon information and belief, Trevor Gile is an individual and resident of Cuyahoga County, Ohio. At all times relevant, Trevor Gile was the co-owner of Motorcars Honda with Chuck Gile.

9.      Jurisdiction and venue are proper before this Court as the events underlying the Complaint herein occurred in Cuyahoga County, Ohio.

## GENERAL ALLEGATIONS

10.      In December 2018, Banks was happily employed at a stable job as the General Manager of Levittown Ford in Long Island, New York and was not seeking new employment.

11.      Banks is regarded as an exemplary employee with an excellent reputation in the auto industry and received the Automotive News 40 Under 40 Award in 2017 for making a big impact at a new car dealership in the US.  A true and correct copy of the 40 Under 40 Article is attached hereto as Exhibit A.

12.     Upon information and belief, Foundation as part of its efforts to purchase two dealerships, began recruiting Banks as he possessed the requisite experience and expertise in US automotive sales.

13.     In December 2018, Foundation and Banks entered into discussions for Banks to be the General Manager and Managing Partner for two dealerships in Cleveland, Ohio which Foundation was in the process of purchasing.

14.     The two dealerships were Motorcars Toyota and Motorcars Honda, both owned by Motor Cars, Inc. (the "Dealerships").

15.     As part of the submission that Foundation sent to Honda Motor Company requesting approval for the purchase of Motorcars Honda, Foundation presented Banks as a "strong Dealer Principal," touting his "10+ years of industry experience" making him "an expert in Automotive Operations and Process Development."  A true and correct copy of the "Submission to Honda Motor Company for the Motorcars Honda Buy/Sell" dated December 18, 2018 is attached hereto as Exhibit B, pg. 4.

16.     Foundation's submission to Honda profiled Banks as "highly regarded" and included testimonials from several of his previous colleagues regarding Banks' leadership, positive attitude and enthusiasm. See Exhibit B, pg. 5.

17.      Foundation promoted Banks' expertise and experience as part of the Management Team that would lead the Honda dealership after the sale even though Banks had not yet accepted employment or begun working for Foundation at that time.  See Exhibit B.

18.     Lastly, Banks is a young and successful African American man, and Foundation exploited his minority status to garner favor with Honda who, like other companies, sought out the economic and reputational benefits from hiring a diverse workforce.  See Exhibit B.

4

19.     In order to entice Banks to leave his lucrative job in New York, uproot his family, and move to Cleveland, Foundation made several promises to Banks regarding what he could expect from his employment with Foundation.

20.     Foundation agreed to employ Banks as the General Manager and Managing Partner of both Motorcars Honda and Motorcars Toyota.

21.     Foundation agreed to pay Banks a base salary of $10,000, plus a bonus equal to 10% of the net earnings before tax of the Dealerships. Foundation further agreed that Banks would be guaranteed $30,000.00/month minimum total base salary plus net earnings from his start date until six months after the close of Foundation's purchase of Motorcars Honda and Motorcars Toyota.

22.     Foundation also offered Banks the opportunity to purchase to a 25% partnership interest in Foundation.

23.     Foundation also agreed to pay Banks a moving allowance for up to $20,000 for relocation expenses from New York to Cleveland as well living and vehicle allowances.

24.     Foundation, through its officers, Kutschinski and Kramer, also assured Banks that he would have complete autonomy over the management of both Dealerships.

25.     Additionally, Foundation, through its officers, promised that Banks would only be fired if he did anything morally wrong.

26.     Banks was reluctant to leave his current employment and residence in New York. Banks was especially concerned about his future if the purchase of the Dealerships did not go through.   However, Foundation, through its officers, assured him that the deal would "sail through."

27.    Foundation further assured Banks that in the very unlikely event the deal did not go through, he would still have a job with Foundation.

28.    Foundation also told Banks that his employment was not conditioned on upon him investing and that Banks would still be a GM if he decided not to invest as a partner.

29.    These representations, along with the promises that Banks would have full autonomy as GM, that he would be employed with Foundation regardless of the sale of the Dealerships, that his relocation and living expenses would be reimbursed, and that he would not be fired except if he did anything morally wrong, induced him to accept the offer from Foundation.

30.    On or about January 3, 2019, Banks moved to Cleveland.

31.    In doing so, Banks spent the money that he and his wife had been saving for IVF treatments with the understanding based on the representations from Foundation that he would be reimbursed for his relocation expenses.

32.    On January 7, 2019, Banks began his employment with Foundation and was jointly employed by Foundation and Motorcars Honda.

33.    Once Banks arrived in Ohio, he was informed by Foundation that he would be managing only Motorcars Honda until Toyota approved the sale of Motorcars Toyota.

34.    Despite the promises made by Foundation regarding Banks' autonomy to make decisions, Banks' ability to manage the dealership was extremely limited.

35.    Once Banks began working at the Motorcars Honda, Foundation required Banks to comply with the directives of Chuck Gile and Trevor Gile, who were very involved in supervising and directing Banks' day to day management of the dealership.

36.     Banks interacted with Chuck Gile weekly via email or phone calls as Chuck Gile was not present at Motorcars Honda, but he communicated his directives to Banks through Kramer and Foundation and required updates on what was happening at the dealership.

37.     Banks interacted with Trevor Gile at Motocars Honda daily, more specifically regarding the operations under the Management Contact between Foundation and Motorcars Honda.

38.     Trevor Gile was to be Banks' supervisor until the dealership purchase of Motorcars Honda closed.

39.     Foundation required Banks to comply with the direction and supervision of Chuck Gile and Trevor Chile until the dealership purchase of Motorcars Honda closed.

40.     Additionally, Foundation required any actions regarding employees to be approved by Kramer first, demonstrating Banks' lack of autonomy and decision-making power at the dealership.

41.     The Giles, Kramer, and Foundation demanded that Banks be present at the dealership from open to close (9:00 AM to 8:00 PM), seven days per week.

42.     Due to the unreasonable expectation of a seventy-seven (77) hour work week, Banks felt compelled to disclose that he had been diagnosed with Multiple Sclerosis ("MS"). Banks stated that the MS did not affect his ability to perform his job as GM.

43.     Banks told Foundation and Motorcars Honda that while he would do his best to work open to close as requested, he did not think this would be efficient or effective. Banks explained that it might not be possible to work such excessive hours given his MS.

44.     Banks also stated that he and his wife had been experiencing fertility problems and were participating in IVF, as well as exploring surrogacy and adoption. Working open to close, seven days per week, would impede Banks' ability to remedy the fertility issue.

45.     Banks requested to work Monday through Friday during the normal working hours of 8:30am to 5:30pm, as well as Saturday from 8:30am to 12:00pm.

46.     Defendants were thus put on notice of facts which triggered their duty to engage in the interactive process with Banks regarding this reasonable accommodation. Foundation and Motorcars Honda made no attempt to engage in any interactive process with Banks regarding reasonable accommodation.

47.     Despite all these issues and constraints, under Banks' management, the performance of Motorcars Honda improved significantly.  In Banks' two (2) months at Motorcars Honda, Per Vehicle Retail ("PVR") improved by 250% (from $800 to $2,000) and gross profit improved by 30%.  In contrast, the Toyota dealership, which Banks was not allowed to manage at this time, decreased in sales.

48.     Discussions regarding Foundation's purchase of both Motorcars Honda and Motorcars Toyota continued to move forward in reliance on Foundation's submissions which held out Banks as taking on a key role after the purchase given his experience and success as a leader in the US auto industry, as well as his status as a minority.

49.     On March 7, 2019, with the deal being on track and shortly after Banks disclosed his MS, Foundation terminated his employment.

50.     Foundation attempted to mask its wrongful termination of Banks under the false pretext that Banks was terminated because he allegedly failed to qualify for financing for investment in the dealership.

51.     Banks never received a refusal from his bank to provide financing for investment in the dealerships.  In contrast, communications from his bank indicated that it was willing to finance Banks' investment in the Dealerships.

52.     Additionally, Foundation had provided Banks with a Non-Disclosure Agreement to provide to his bank to start the financing process indicating that the investment process was moving forward.

53.     Obtaining financing to purchase an ownership interest in the dealership was not a requirement for Banks' continued employment.  In fact, despite repeated requests, Banks never received the partnership agreement that would allow him to invest.

54.     Banks' wrongful termination occurred because Defendants wanted to avoid honoring the promises and agreements had made to him, including but not limited to, giving Banks a 25% ownership interest in the Dealerships, full autonomy over the management of both Dealerships, and other benefits such as vacation pay, insurance, and moving, living and vehicle expenses.

55.     Defendants used Banks' name, credentials, expertise in the US auto industry, and minority status as an African American man in order to promote its business and obtain approval from Honda and Toyota for the purchase of the Dealerships.

56.     Once Defendants obtained the requisite approval and the deal was underway, Defendants terminated Banks.

## COUNT I
### (Breach of Contract)

57.     Banks restates and realleges all of his allegations contained in Paragraphs 1 through 56 of his Complaint as if fully rewritten herein.

9

58.     Banks and Defendants entered into an agreement whereby Banks promised to relocate to Cleveland to work for Foundation and Motorcars Honda.

59.     In consideration for Banks' promises, Foundation and Motorcars Honda promised to compensate Banks for his roles as the General Manager and Managing Partner at both the Toyota and Honda dealerships and to provide Banks with complete autonomy at the Dealerships.

60.     The compensation terms promised by Foundation and agreed to by Banks included a guaranteed salary of $30,000 per month from his start date until six months after the close of the purchase of the Dealerships, as well as benefits, including vacation pay, insurance, moving, living and vehicle allowances.

61.     In reliance on the terms of the compensation and benefits promised by Foundation and on the partnership buy-in, Banks quit his job in New York, spent the money he saved for IVF treatments to relocate to Cleveland, Ohio, and performed his obligations under the agreement by managing the Motorcars Honda dealership and increasing its profitability.

62.     Defendants breached the contract by:

 a.   failing to allow Banks to purchase a 25% partnership interest;

 b.   failing to compensate Banks per the agreed upon terms;

 c.   failing to reimburse Banks for any moving expenses; and

 d.   terminating Banks' employment with Foundation without just cause and for no legitimate reason.

63.     As a result of Defendants' breaches of contract, Banks has suffered, and continues to suffer, damages, including but not limited to, past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships

10

closed, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT II
### (Promissory Estoppel)

64.     Banks restates and realleges all of his allegations contained in Paragraphs 1 through 63 of his Complaint as if fully rewritten herein.

65.     Defendants clearly and unambiguously promised that Banks would have complete autonomy over the Dealerships if he relocated from New York to Cleveland to accept the position as General Manager and Manager partner of the Dealerships.

66.     Defendants clearly and unambiguously promised Banks that he would have a 25% ownership interest in and management of the Dealerships after the deal closed.

67.     Defendants cleary and unambiguously promised Banks that even if the deal was not completed, he would still remain employed by Foundation.

68.     In reliance on these promises, Banks left his stable job in New York where he was making $22,500/month and moved to Cleveland, Ohio to work for Foundation.

69.     Banks' reliance on Defendants' promises was reasonable and foreseeable as Banks expressed concerns and hesitation about making the move, but was repeatedly reassured that the conditions of his employment would be met and the deal would be completed such that he would be running the Dealerships with complete autonomy beginning in January 2019.

70.     As a result of Defendants' breach of these promises, Banks was injured and sustained damages, including but not limited to, lost wages and benefits, future wages and benefits, and emotional distress in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00).

11

## COUNT III
### (Unjust Enrichment)

71.     Banks restates and realleges all of his allegations contained in Paragraphs 1 through 70 of his Complaint as if fully rewritten herein.

72.     Banks conferred a benefit on Defendants through the use of his name, credentials, expertise in the US auto industry, and minority status as an African American man in order for Defendants to promote their business and obtain approval from Honda and Toyota for the purchase of the Dealerships.

73.     Defendants had knowledge of this benefit as they presented Banks as a "strong Dealer Principal," touting his "10+ years of industry experience" making him "an expert in Automotive Operations and Process Development."  See Exhibit B, pg. 4.

74.     Foundation's submission to Honda profiled Banks as "highly regarded" and included testimonials from several of his previous colleagues regarding Banks' leadership, positive attitude and enthusiasm. See Exhibit B, pg. 5.

75.      Foundation promoted Banks' expertise and experience as part of the Management Team that would lead the Honda dealership after the sale even though Banks had not yet accepted employment or begun working for Foundation at that time.  See Exhibit B.

76.     Banks is a young and successful African American man, and Foundation exploited his minority status to their benefit to garner favor with Honda who, like other companies, sought out the economic and reputational benefits from hiring a diverse workforce.  See Exhibit B.

77.     Defendants retained the benefit conferred by Banks by obtaining approval to purchase the Honda dealership and moving forward with the deal, but then terminated Banks to avoid having to honor any agreements and promises they made to him, including but not limited to the 25% ownership interest in the Dealerships and other compensation and benefits.

12

78.     It would be unjust for Defendants to retain this benefit without providing Banks the value of the services rendered and promises made to him.

79.     As a result of Defendants' unjust enrichment, Banks was injured and sustained damages, including but not limited to, lost wages and benefits, future wages and benefits, and emotional distress in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT IV
### (Violation of Ohio Rev. Code § 4112.02)

80.     Banks restates and realleges all of his allegations contained in Paragraphs 1 through 79 of his Complaint as if fully rewritten herein.

81.     Foundation is an "employer" as defined by R.C. 4112.01(A)(2).

82.     Banks was jointly employed by Foundation and Motorcars Honda while working as General Manager for Motorcars Honda.

83.     Banks suffers from Multiple Sclerosis, and he and his wife were and are experiencing fertility problems and, as a result of his disability, Banks is a member of a protected class pursuant to R.C. § 4112.

84.     At all times relevant, Banks was qualified to perform the essential functions of his position as General Manager of the dealership, with or without reasonable accommodation.

85.     Ohio Rev. Code § 4112.02(A) prohibits employers from discriminating on the basis of disability "with respect to hire, tenure, terms, conditions, or privileged of employment or any matter directly or indirectly related to employment."

86.     Defendants have violated Ohio Rev. Code § 4112.02(A) by denying Banks' requests for reasonable accommodations, failing to engage in the interactive process regarding

reasonable accommodation of Banks' disabilities, and terminating Banks' employment with Foundation.

87.     Defendants' conduct has adversely affected Banks as Defendants terminated Banks' employment without valid justification.

88.     As a result of Defendants' actions, Banks has suffered, and continues to suffer, damages including past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00).

89.     Because Defendants are part of a single, integrated enterprise and/or are joint employers, Defendants are jointly and severally liable for Banks' compensatory damages. Because they acted with actual malice on account of their conscious disregard for Banks' rights under Ohio law, they are also liable for punitive damages.

90.     Finally, Defendants are liable for court costs, reasonable attorneys' fees and expenses Banks has incurred in the prosecution of this matter.

## COUNT V
### (Retaliation)

91.     Banks restates and realleges all of his allegations contained in Paragraphs 1 through 90 of his Complaint as if fully rewritten herein.

92.     Ohio Rev. Code § 4112.02(I) prohibits employers from discriminating "against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted or participated in any matter

14

in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

93.    Defendants violated Ohio Rev. Code § 4112.02(I) when they retaliated against Banks when he requested a reasonable accommodation for his disability.

94.    Banks engaged in a protected activity by requesting a reasonable accommodation to work Monday through Friday during the normal working hours of 8:30am to 5:30pm, as well as Saturday from 8:30am to 12:00pm.

95.    Banks' protected activity was known to Defendants as he spoke with both Kutschinski and Kramer about his requested working hours.

96.    Chuck Gile and Trevor Gile instructed Foundation to impose longer working hours for Banks without reasonable accommodation.

97.    Defendants took an adverse action against Banks by terminating his employment.

98.    Additionally, Defendants failed to engage in an interactive process to provide reasonable accommodation as to Banks' working hours.

99.    A causal connection exists between Banks' protected activity of requesting a reasonable accommodation for his disability and Defendants' termination of his employment.

100.    As a result of Defendants' actions, Banks has suffered, and continues to suffer, damages including past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at

trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00), in addition to punitive damages.

<u>**COUNT VI**</u>
**(Violation of ORC § 4112.02(J) against Kutschinski, Kramer, Chuck Gile, and Trevor Gile)**

101.    Banks restates and realleges all of his allegations contained in Paragraphs 1 through 100 of his Complaint as if fully rewritten herein.

102.    Ohio Revised Code **§** 4112.02(J) states that it shall be an unlawful discriminatory practice "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice."

103.    Kutschinski, Kramer, Chuck Gile, and Trevor Gile aided and abetted Foundation and Motorcars Honda in their discriminatory treatment of Banks.

104.    Kutschinski, Kramer, Chuck Gile, and Trevor Gile knew of Banks' disabilities and his requests for reasonable accommodation to work standard hours at the dealership as he had successfully done in his prior jobs.

105.    Chuck Gile and Trevor Gile instructed Foundation to impose longer working hours for Banks without reasonable accommodation and without engaging in the interactive process in violation of ORC **§** 4112.02(J).

106.    Shortly thereafter, Kutschinski and Kramer personally participated in, coerced and compelled Banks' termination in violation of ORC **§** 4112.02(J).

107.    As a result of Defendants' actions, Banks has suffered, and continues to suffer, damages including past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%)

partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00), in addition to punitive damages.

## COUNT VII
### (Fraud)

108.    Banks restates and realleges all of his allegations contained in Paragraphs 1 through 107 of his Complaint as if fully rewritten herein.

109.    Defendants, in order to entice Banks to leave his job in New York and relocate to Cleveland, represented to Banks that he would be employed as General Manager of Motorcars Honda regardless of whether the purchase of both Dealerships closed.

110.    Defendants also represented to Banks that he would have the opportunity to buy a 25% interest in the partnership after the Dealerships purchase closed.

111.    Defendants represented to Banks that he would be reimbursed for his moving and living expenses in the amount of $20,000 once he relocated to Cleveland.

112.    Defendants also represented that Foundation was an Equal Opportunity Employer and that it complies with all applicable employment laws.

113.    These representations were material to Banks' decision to relocate to Cleveland and begin working with Defendants.

114.    However, Defendants needed Banks' name, credentials, expertise in the US auto industry, and minority status as an African American man in order to promote its business and obtain approval from Honda and Toyota for the purchase of the Dealerships.

115.    Thus, these representations were made falsely, with knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred, solely to entice Banks to become involved with Defendant in order to for the purchase of the Dealerships to progress.

116.    Defendants intended to, and did, mislead Banks into relying on these representations and to accept the General Manager position with Foundation and move to Cleveland to begin his employment.

117.    Banks justifiably relied on these representations as he was repeatedly assured by Foundation, through its officers Kutschinski and Kramer, that he would remain employed as a General Manager even if the purchase of the Dealerships did not close and that his ability to buy a 25% partnership interest was not required for his continued employment.

118.    Defendants used Banks' name, credentials, expertise in the US auto industry, and minority status as an African American man in order to promote its business and obtain approval from Honda and Toyota for the purchase of the Dealerships.

119.    Once Defendants obtained approval and the deal was underway, Defendants discarded Banks.

120.    As a result of Defendants' fraudulent representations to Banks and Banks' justifiable reliance thereon, Banks has suffered, and continues to suffer, damages including past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining

substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00), in addition to punitive damages.

WHEREFORE, Plaintiff, Kenneth Banks, demands judgment in his favor as follows:

A.       Under Count One, an award for damages including but not limited to, past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00);

B.       Under Court Two, an award for damages including but not limited to, past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, including emotional distress due to the loss of ability to pay for IVF treatments, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00);

C.       Under Count Three, an award for damages, including but not limited to, past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, including emotional distress due to the loss of ability to pay for IVF treatments, plus expenses incurred in attempting

19

to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00);

D.     Under Count Four, an award for damages, including but not limited to, past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, including emotional distress due to the loss of ability to pay for IVF treatments, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00), in addition to punitive damages;

E.     Under Count Five, an award for damages, including but not limited to, past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, including emotional distress due to the loss of ability to pay for IVF treatments, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00), in addition to punitive damages;

F.   Under Count Six, an award for damages, including but not limited to, past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, including emotional

distress due to the loss of ability to pay for IVF treatments, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00), in addition to punitive damages; and

      G.   Under Count Seven, an award for damages, including but not limited to, past and future lost wages, bonuses, deferred compensation and other benefits, Twenty Thousand Dollars ($20,000.00) for moving expenses, and Twenty-Five Percent (25%) partnership interest in Foundation after the sale of the Dealerships closed, emotional distress, including emotional distress due to the loss of ability to pay for IVF treatments, plus expenses incurred in attempting to obtain the benefits due to Banks, and expenses incurred in seeking and obtaining substitute employment, all to Banks' damage in an amount to be proven at trial, but in excess of Twenty-Five Thousand Dollars ($25,000.00); and

      H.   Reasonable attorneys' fees, interest, costs, and any other relief which this Court deems appropriate.

                      Respectfully submitted,

                      DINN, HOCHMAN & POTTER, LLC

                      /s/ Thomas A. Barni
                      THOMAS A. BARNI (0064555)
                      LINDSEY P. ROZEK (0097124)
                      5910 Landerbrook Drive, Suite 200
                      Cleveland, Ohio  44124
                      Telephone: (440) 446-1100
                      Facsimile:  (440) 446-1240
                      E-Mail: tbarni@dhplaw.com
                              lrozek@dhplaw.com
                      Attorneys for Plaintiff