## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH BANKS, | ) | CASE NO.:  1:20-cv-02026-DAR |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANTS' MOTION FOR** |
| FOUNDATION AUTOMOTIVE | ) | **SUMMARY JUDGMENT AND** |
| CORP., *et al.,* | ) | **BRIEF IN SUPPORT** |
| | ) | |
| Defendants. | ) | |

Defendants, Foundation Automotive Corp. ("FAC"), Foundation Auto Holdings, LLC ("FAH"), Kevin Kutschinski ("Kutschinski"), Chuck Kramer ("Kramer"), Motorcars Honda ("MH"), Charles Gile ("C. Gile"), and Trevor Gile ("T. Gile") (collectively "Defendants"), hereby move for summary judgment and dismissal of all claims under the authority of Rule 56 of the Federal Rules of Civil Procedure.

## TABLE OF CONTENTS

I. FACTUAL BACKGROUND.................................................................................... 6

II. STATEMENT OF UNCONTROVERTED FACTS................................................. 9

III. Law and Argument ............................................................................................... 11

   A.     Summary Judgment Standard ........................................................................ 11

   B.     Defendants Did Not Breach Any Contract With Banks................................. 12

      1.     The Pay Plan's Condition Precedent Did Not Occur ................................ 12

      2.     Alternatively, Banks Breached the Pay Plan ........................................... 14

   C.     Banks' Promissory Estoppel Claim Cannot Lie............................................ 14

   D.     Banks' Unjust Enrichment Claim Fails......................................................... 17

   E.     Defendants Did Not Violate Ohio Rev. Code § 4112.02 .............................. 17

      1.     Plaintiff's Deposition Testimony Precludes Him From Making the Requisite *Prima Facie* Showing That He Had A Disability ...................... 18

      2.     Foundation terminated Banks' Employment for a legitimate, non-discriminatory reason ........................................................................ 19

      3.     Foundation's legitimate, non-discriminatory reason is not a pretext for disability discrimination .......................................................................... 20

   F.     Retaliation – Count V - ¶91-100............................................................. 20

   G.     Kutchinski, Kramer, Chuck Gile, and Trevor Gile Did Not Violate Ohio Rev. Code § 4112.02(j) ............................................................................... 22

   H.     Banks Cannot Prove Fraud............................................................................ 23

2

IV. Conclusion ................................................................................................................... 24

Certificate of Service ......................................................................................................... 25

# TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.*, ............................................................................ 10

*Apple v. Coffman* ...................................................................................................... 13

*Barreca v. Travco Behavioral Health, Inc.*, ........................................................... 17

*Blair v. City of Cleveland* ........................................................................................ 11

*Bridgestone Ams. Tire Operations, LLC v. Harris* ................................................. 13

*Campbell v. George J. Igel & Co.*, .......................................................................... 12

*Celotex Corp. v. Catrett*, .................................................................................... 10, 11

*Frankart v. Jeep Corp.*, ............................................................................................ 15

*Friedland v. Lipman*, ................................................................................................ 22

*Fulson v. City of Columbus* ...................................................................................... 11

*Greer-Burger v. Temesi* ............................................................................................ 19

*Hall v. Crawford County Job and Family Services* ...................................... 17, 19, 20

*Hambleton v. R.G. Barry Corp.*, .............................................................................. 16

*Harris v. General Motors Corp.*, ............................................................................. 11

*Hood v. Diamond Prod., Inc.*, .................................................................................. 17

*Johson-Newberry v. Cuyahoga County Child and Family Services*, ........................ 21

*Kline v. Mortg. Elec. Registration Sys., Inc.*, ......................................................... 11

*Lippert v. Univ. of Cincinnati* .................................................................................. 14

*Martcheva v. Dayton Board of Education* ................................................................ 21

*Mattessich v. Weathersfield Twp.*, ..................................................................... 16, 17

*Mers v. Dispatch Printing Co.* .................................................................................. 13

*Mumaw v. W. & S. Life Ins. Co.*, ............................................................................................ 12

*Musil v. Gerken Materials, Inc.*, ............................................................................................ 20

*Pittman v. Parillo* ................................................................................................................. 21

*Rorrer v. Stow* ...................................................................................................................... 20

*Stachura v. Toledo*, .............................................................................................................. 19

*Street v. J.C. Bradford & Co.*, ............................................................................................. 11

*Texas Dept. of Cmty. Affairs v. Burdine* ............................................................................. 17

*Textron Fin. Corp. v, Nationwide Mut. Ins. Co.*, ................................................................. 22

*Weinrauch v. Sherwin-Williams Co.*, .................................................................................... 21

*Wroblesky v. Hughley* ........................................................................................................... 12

Rules

Rule 56 of the Federal Rules of Civil Procedure ....................................................................... 1

Rule 56(e) .................................................................................................................................. 11

Regulations

Ohio Rev. Code § 4112.02(j) .................................................................................................... 21

Ohio Rev. Code § 4112.02 ................................................................................................ 16, 18

# I. FACTUAL BACKGROUND

FAC and FAH (collectively, "Foundation"), own and operate several automotive dealerships across the United States and Canada. Kutschinski is Foundation's President and CEO. Kramer is Foundation's former COO. MH is a former Honda automotive dealership in Cleveland Heights, Ohio. Defendants Charles Gile and Trevor Gile (collectively, the "Giles") owned MH before selling it to Foundation.

In 2018, Foundation agreed in principle to purchase MH and Motorcars Toyota (also owned by the Giles). Ultimately, Foundation only purchased the Motorcars Honda dealership, which closed in August of 2019. Foundation subsequently sold the Honda store in October of 2021.

In December 2018, Foundation began recruiting Banks to be a partner and the general manager of both stores. On or about December 4, 2018, Foundation sent Banks the candidate packet for the partnership, which required the candidate to invest in and purchase 25% of the dealerships being acquired. On December 14, 2018, Banks executed a dealer application with Toyota (part of the Manufacturer approval process), indicating his intention to own 25% of the dealership. On December 28, 2018, Banks signed a Pay Plan with Foundation to become the general manager and managing partner of the Honda and Toyota stores Foundation was planning to purchase from Motorcars. **Exhibit A, Pay Plan**. Banks alleges that each of the Defendants breached the Pay Plan. The Pay Plan makes clear (bold and underlined) that the agreement does not take effect until Foundation closes on the purchase of both the Honda and Toyota stores. *Id.* Because the condition precedent never occurred, because Banks was terminated before Foundation closed on the Honda store and it never closed on the Toyota store, the Pay Plan never took effect.

Prior to the Pay Plan taking effect, Banks was paid as an at-will employee in accordance with the Pay Plan. The Pay Plan states that it "constitutes the entire understanding between you and Foundation Auto, supersedes all prior oral or written communications, agreements or

6

prospects and may be amended or modified only in writing signed by both parties." **Ex. A**. This is significant because many of Banks' allegations arise from alleged promises made before Banks executed the Pay Plan.

Banks began working for Foundation on or about January 7, 2019, before the Honda or Toyota deals closed. (Banks Dep. 87:1-3).[1] In anticipation of both Honda and Toyota approving Foundation's planned purchases, the Giles and Foundation entered into a Management and Operations Agreement ("Management Agreement"). **Ex. B**. Pursuant to the Management Agreement, the entities by which Foundation would own the Honda and Toyota stores would operate the stores until Honda and Toyota approved the proposed sales to Foundation. (Kramer Aff. ¶ 4; Kutschinski Aff. ¶ 4; C, Gile Aff. ¶ 3; T. Gile Aff. ¶ 3).[2] Honda approved the Management Agreement and allowed Foundation to operate the Honda store. Toyota did not approve the Management Agreement and, therefore, Foundation was not permitted to operate the Toyota store before the proposed transaction closed. As a result, when Banks started his employment, he only worked at the Honda store as an at-will employee of Motor Cars, Inc.[3]

Because Foundation was operating the Honda store under the Management Agreement and did not own the store, they were not permitted to make major changes to personnel or operations. Motorcars still owned the Honda store and retained certain control under the Management Agreement. Banks was keenly aware that Foundation did not own the Honda store and it was operating pursuant to a Management Agreement.

---

[1] Volume 1 of Banks' deposition transcript ("Banks Dep.") was filed on February 28, 2023.
[2] Chuck Kramer's Affidavit is attached as <u>Exhibit C</u>. Kevin Kutschinski's Affidavit is attached as <u>Exhibit D</u>. Chuck Gile's Affidavit is attached as <u>Exhibit E</u>. Trevor Gile's Affidavit is attached as <u>Exhibit F</u>. Jeff Jeans' Affidavit is attached as <u>Exhibit G</u>.
[3] Banks was paid according to the Pay Plan, <u>Exhibit A</u>.

On or about January 10, 2019, Banks advised Foundation that he was prepared to go forward with his equity investment. The following week, he recanted and advised that he did not have the personal funds to complete the required and agreed upon equity investment. On February 13, 2019, Banks informed Kramer and Kutschinski via email that he was recently diagnosed with multiple sclerosis ("MS"), but that he had zero symptoms and it did not affect his work at all.[4] **Exhibit H, 2/13/19 Email**. After February 13, 2019, the only conversations Banks had concerning his MS diagnosis were supportive text messages he received from Kutschinski. **Ex. H**.

After informing Kramer and Kutschinski of his MS diagnosis, Banks did not ask for any accommodations with respect to his work hours, nor did he advise them that he needed any accommodations because of his MS.[5] Foundation did not deny any request or require Banks to work hours different than those requested. (Kramer Aff. ¶¶ 13-15; Kutschinski Aff. ¶¶ 8-10; Jeff Jeans Aff. ¶¶7-9). Banks alleges that Foundation denied his request for reasonable accommodations for a change in working hours when Foundation terminated his employment. This allegation is false and contradicts the evidence. On March 7, 2019, Foundation terminated Banks' employment.

On September 3, 2019, Banks filed with the Ohio Civil Rights Commission ("OCRC"). On February 13, 2020, the OCRC issued a Letter of Determination/Order ordering that the charge be dismissed based on a finding of no probable cause. Banks filed a Complaint in the Court of Common Pleas for Cuyahoga County, Ohio on July 22, 2020. Subsequently, the case was removed to the United States District Court based upon diversity jurisdiction on or about September 11, 2020. Plaintiff filed his First Amended Complaint ("FAC") in the United States District Court for the Northern District of Ohio, Eastern Division on October 29, 2020.

---

[4] According to his medical records, Banks was not officially diagnosed with MS until June 24, 2020.
[5] The Giles were not aware of Banks' diagnosis. (Banks Dep. 94:9-13).

## II. STATEMENT OF UNCONTROVERTED FACTS

1. Banks worked for Levittown Ford for 1 month before he moved to work for Foundation. Banks Depo 25:23-27:10.

2. Foundation began recruiting Banks in December of 2018. Banks Depo 37:1-8.

3. Initially, Foundation was recruiting Banks to be the general manager and managing partner of dealerships Foundation was looking to purchase in New York, which required Banks to buy into the store for ownership. Banks Depo 38:11-39:3.

4. Banks agrees that Foundation's plan with him was always for him to buy into one or more of the dealerships Foundation was considering acquiring. Banks Depo 40:2-4.

5. Banks admits that it was prior to him starting employment with Foundation that he knew that he would have to invest some percentage of money for ownership in whichever store he went to. Banks Depo 46:16-47:4; 48:6-49:11; **Exhibit I, McMeeken Email 12.5.2018**.

6. Banks agrees that he understood that had to have his investment money of 25% by the date that Foundation closed on the prospective dealerships in Ohio. Banks Depo 56:3-17

7. On December 12, 2018, Banks committed to Foundation Auto and the Cleveland stores in which he would serve as the General Manager and the Managing Partner once Foundation closed on the dealerships and he invested. Banks Depo 68:13-69:5.

8. Banks states that his understanding was that he was required to work from opening to close for the dealership, however, on January 16th, Banks stated that he informed Kevin Kutchinski that he would be working the hours of 8:30 to 5:30 Monday through Friday, and Saturday until noon. Banks Depo 84:23-89:21. Neither Kutschinski nor anyone else objected to Banks' request. Banks Depo 92:19-95:3.

9. Banks stated the reason he provided the revised working hours was because he was experiencing fatigue, however, he admits that he doesn't think he ever told Foundation that he was dealing fatigue. Banks Depo 89:14-90:4.

10. Banks admits that he informed Foundation of his working hours on January 16th, before he told Foundation that he had been diagnosed with MS, which was on February 13th. Banks Depo 91:15-92:10.

11. Banks didn't even have any conversations or communications with the Giles, nor does he believe the Giles knew he had MS. Banks Depo 94:9-95:5.

12. Banks acknowledges that he never submitted a written loan application. Banks Depo 97:23-98:1; 98:13-99:11.

13. Banks acknowledges that he never told Chuck, Kevin, or anyone at Foundation about his potential symptoms from MS because he didn't know what his symptoms were at the time. Banks Depo 110:11-25.

14. Banks admits that he told Kevin and Chuck that his recent diagnosis of MS did not affect his work at all. Banks Depo 113:10-13; **Ex. H**.

15. Banks admits he never had a conversation with Chuck or Kevin in which he said that his MS was affecting his work. Banks Depo 117:12-17.

16. Banks admits that while he was employed at Foundation he didn't consider himself to have a disability. Banks Depo 118:18-119:15.

17. Banks agrees that it was always Foundation's intent to employ him as the general manager and the managing partner of MH and MT. Banks Depo 124:3-18

18. Banks agrees that the Gile's are not a party to his executed Pay Plan with Foundation. Banks Depo 129:20-130:9.

19. Banks never signed a Partnership Agreement. Banks Depo 131:16-132-19.

20. Banks agrees that Foundation never closed on the Toyota or Honda store while he was employed by Foundation. Banks Depo 145:14-19.

21. Banks admits that while he was working at the Honda store, he knew Foundation did not own the store and that the Gile's still owned the dealership. Banks 158:12-22.

22. Banks admits that the contract, the Pay Plan, supersedes the verbal guarantees he allegedly received, such as the ability to have complete autonomy. Banks Depo 160:17-161:1.

23. Banks was terminated on March 7, 2019. Banks Depo 190:11-14.

24. Banks contends the reasons given for his termination were that he couldn't prove his ability to buy in to the dealerships and that he told an employee that he was an MMA fighter and it made an employee feel uncomfortable. Banks Depo 194:12-195:9; Kramer Aff. ¶ 10.

25. Banks agrees that after he told Foundation what his working hours would be on January 16th, he doesn't recall Foundation bringing up his working hours again. Banks Depo 206:6-20.

26. Banks admits that there were no negative discussions about him having MS at all. Banks Depo 206:21-207:2.

27. Banks admits that Kutschinski was supportive of him. Banks Depo 207:3-9.

28. Even though Banks admits he didn't know what his symptoms were of MS, he expected his employer to engage in the interactive process despite telling his employer that he wasn't experiencing symptoms and his MS didn't affect his work at all. Banks Depo 207:9-21.

29. Banks acknowledges that on January 10, 2019, when Banks was asked about his investment timeline, he responded to Foundation via email that "I'm ready to go with my investment when you guys are ready to go. I will be ready to close on the partnership within 60 days." Banks Depo Vol. II 36:8-37:9; **Exhibit J, 1.10.2019 Email Chain**.

30. Banks admits that the Pay Plan executed by him on December 28, 2018, that he signed a document that requires him to purchase 25% of the dealerships at the time of close. Banks Depo 56:9-58:12; **Ex. A.**

31. Banks admits that the only accommodation he recalls requesting from Foundation was a reasonable schedule. Banks Depo Vol. II 77:13-21; **Ex. N**.

32. Banks admits he made the request for a reasonable working schedule on the day he sent a text to Kevin and Chuck informing them of the hours he would be working. Banks Depo Vol. II 79:17-80:12.

33. Banks contends that his request was denied because he was terminated on March 7, 2019. Banks Depo Vol. II 80:13-21.

34. Banks acknowledges that he didn't explain the specifics of his disability to Foundation because he didn't really know the specifics of his MS symptoms. Banks Depo Vol. II 89:19-24.

35. Banks admits he does not know if Chuck or Trevor Gile knew that he had MS before he was terminated, and he doesn't recall telling them. Banks Depo Vol. II 91:19-92:8.

### III. LAW AND ARGUMENT

#### A.  Summary Judgment Standard

Summary judgment is appropriate when the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the burden of showing the absence of any such "genuine issue".  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this initial burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ.

P. 56(e)).  The party opposing summary judgment cannot rest on his pleadings or merely reassert his previous allegations.  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position.  *Celotex*, 477 U.S. at 324; *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  The trial court does not have the duty "to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Instead, the non-moving party is under an affirmative duty to point out to the trial court specific facts in the record that create a genuine issue of material fact. *Id.*; *Blair v. City of Cleveland*, 148 F.Supp.2d 894, 903 (N.D. Ohio 2000); *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio 1992).

A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson*, 477 U.S. at 248. The Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## B.     Defendants Did Not Breach Any Contract With Banks

### 1.   The Pay Plan's Condition Precedent Did Not Occur

Defendants did not breach Banks's Pay Plan because it never became effective. Because Foundation never closed on its purchase of Motorcars Toyota, a condition precedent, the Pay Pan never took effect and neither party was bound by the Pay Plan. Under Ohio law, which the parties agree applies here, the essential elements of breach of contract are: (1) the existence of a contract; (2) performance by the plaintiff; (3) the defendant's breach; and (4) damages or loss to the plaintiff. *Kline v. Mortg. Elec. Registration Sys., Inc.*, No. 16-3932, 704 Fed. Appx. 451, 2017 WL 3263745, at *8 (6th Cir. Aug. 1, 2017) (*citations omitted*).

12

The Supreme Court of Ohio has defined a "condition precedent" as "one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some act after the terms of the contract have been agreed on, before the contract shall be binding on the parties." *Wroblesky v. Hughley*, 2021-Ohio-1063, 169 N.E.3d 709, ¶ 45 (11th Dist.) quoting *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1, 119 N.E. 132, 15 Ohio L. Rep. 455 (1917), syllabus. When a condition precedent is not satisfied, the parties to a contract are not obligated to the terms of the agreement. *Campbell v. George J. Igel & Co*., 2013-Ohio-3584, 3 N.E.3d 219, P13 (4th Dist.).

Here, the plain and ordinary meaning of the Pay Plan indicates that the parties did intend Foundation closing on the purchase of Motorcars Honda ***and*** Motorcars Toyota to be a condition precedent to the terms of the Pay Plan becoming effective. **Ex. A**. At the top, the Pay Plan provides that Foundation Auto Holdings, LLC is offering Banks "the following pay plan in your roles at the following Foundation Auto dealership legal entities (the "Dealerships"), which we are partners in (the "Pay Plan")." *Id.* The Pay Plan then identifies the roles of "General Manager and Managing Partner" for ***two*** entities: FA OH HND, LLC (f/k/a Motorcars Honda) and FA ND TYTA, LLC (f/k/a Motorcars Toyota). *Id.* Finally, and most critical, the Pay Plan explicitly, boldly, conspicuously, and unambiguously details the condition precedent—the terms of the Pay Plan will "take effect on the date Foundation Auto closes on the purchase of the Dealerships." *Id.*

In order for the Pay Plan to take effect, it was a condition precedent for Foundation to close and complete its purchase of both the Honda and Toyota. Foundation did not close on the Honda store until August 30, 2019 and never closed on the proposed purchase of Motorcars Toyota. **Exhibit K, Declaration of Carl Dahlen**. As a result, the Pay Plan never became effective and Banks was an employee at-will who could be terminated at any time for any reason.

13

## 2.   **Alternatively, Banks Breached the Pay Plan**

Even if we presume the Pay Plan was effective, Banks was in breach of the Pay Plan when he informed Defendants he could not pay the required 25% partnership buy-in. Banks understood that Defendants required the investment buy-in. Defendants' Statement of Undisputed Facts ("SUF") #'s 4-6, & 29-30.  During his recruitment, Banks assured Defendants that he could afford the buy-in. SUF # 29. After executing the Pay Plan, Banks never applied for a loan. SUF # 12. On or about January 10, 2019, Banks advised Foundation that he was prepared to go forward with his equity investment. SUF # 29; **Ex. J**. The following week, he recanted and advised that he did not have the personal funds to complete the required and agreed upon equity investment. **Exhibit L.**

### C.   **Banks' Promissory Estoppel Claim Cannot Lie**

Banks' promissory estoppel claim cannot lie because the alleged promises are provided for in the Pay Plan, an unambiguous written contract.

In order to establish a claim of promissory estoppel, an employee must show: (1) a clear and unambiguous promise; (2) detrimental reliance; (3) the reliance was reasonable and foreseeable; and (4) damages. *Apple v. Coffman* (May 2, 1996), Fairfield App. No. 95-CA-47, 1996 Ohio App. LEXIS 2097, unreported. "The party asserting promissory estoppel bears the burden of proving, by clear and convincing evidence, all of the elements of the claim." *Bridgestone Ams. Tire Operations, LLC v. Harris*, 2018-Ohio-63, 104 N.E.3d 81, ¶ 40 (5th Dist.).

Promissory estoppel is an equitable doctrine. It applies when no contract has yet been formed, but a promise is made which the promisor reasonably should expect to induce action or forbearance on the part of the promisee, and which does induce such action or forbearance. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 Ohio B. 261, 483 N.E.2d 150. Where a written contract is properly determined to be unambiguous, the trial court does not err in entering

summary judgment, barring the promissory estoppel claim. *Lippert v. Univ. of Cincinnati*, 10th Dist. Franklin No. 96API03-349, 1996 Ohio App. LEXIS 4369, at *11 (Oct. 3, 1996).

*Lippert* is noteworthy because the trial court granted summary judgment to the defendant on plaintiff's breach of contract and promissory estoppel claims. The court determined that the defendant did not breach the contract because the condition precedent was not met. *Id*. at *9. The court then determined that plaintiff's promissory estoppel claim failed because the alleged promise "cannot be used to alter the unambiguous written contract." *Id* at *11.

Here, an agreement was formed and agreed to, but the terms never became effective because the condition precedent never occurred. The Pay Plan contained an entire agreement clause that Banks read, understood, and agreed to. SUF #'s 22, 30. The Pay Plan states "This agreement constitutes the entire understanding between you and Foundation Auto, supersedes all prior oral or written communication, agreement or prospects and may be amended or modified only in wiring signed by both parties." **Ex. A**. The Pay Plan provides that no other representations or promises have been made to him by Foundation Auto or its employees outside of this Agreement and the affixed/referenced policies and procedures, and that you have not been enticed to leave secure employment. **Ex. A**. Because each of the alleged promises were communicated before the Pay Plan was executed, the promissory estoppel claim fails.

Banks alleges three different "promises," all of which fail to meet the elements of a promissory estoppel claim. First, Banks alleges he was promised "complete autonomy over the Dealerships." (FAC ¶ 65). The Pay Plan supersedes any verbal guarantees he allegedly received, such as the ability to have complete autonomy. SUF # 22. Also, Banks would have had autonomy when Foundation closed on the Dealerships and Banks made his investment. However, Banks was employed while the Dealerships were still owned by Motorcars, and Foundation was only

operating the Honda location under a management agreement. Finally, Banks did not and could not suffer any damages from any alleged failure to provide him "complete autonomy."

Second, Banks alleges he was promised "he would have a 25% ownership interest in and management of the Dealerships after the deal closed." (FAC ¶ 66). Again, this was provided for in the Pay Plan. *See* **Ex. A**. He also was not promised a 25% interest—Banks was contractually required to purchase a 25% interest in the Dealerships. *See* **Ex. A**. And as discussed above, Banks was unable to afford the 25% buy-in. Further, Foundation never closed on Motorcars Toyota, the condition precedent, and a critical factor in the alleged promise. Finally, Banks fails to show any damages.

Third, Banks alleges he was promised "that even if the deal was not completed, he would still remain employed by Foundation." (FAC ¶ 67). It is believed Banks is referencing a text message he received from Chuck Kramer on December 6, 2018, when the parties were still negotiating, concerning the partnership buy-in. The text message reads: "Until the you close on the partnership We will not let you go  It is a great opportunity and if your the right guy we want you to run the stores". **Exhibit M**. To begin, Banks was terminated prior to the deals closing, and therefore, prior to Banks being required to complete his buy-in. That is to say, the closing on the partnership had no influence on Foundation terminating Banks' employment. This was not a promise of permanent never ending employment. Any reliance on a purported promise of permanent never ending employment "must be construed as unreasonable and therefore insufficient to meet the requirements of a cause of action in promissory estoppel." *Frankart v. Jeep Corp.*, 6th Dist. Lucas C. A. NO. L-85-062, 1985 Ohio App. LEXIS 9188, at *9 (Nov. 8, 1985). Banks has failed to demonstrate injury by reliance. Further, this same text demonstrates there is no clear and unambiguous promise. The second part of the text reads: "It is a great opportunity

16

and *if* your the right guy we want you to run the stores" (emphasis added). **Ex. M**. This evidences that Banks still must demonstrate that he is capable of performing the job and is the right fit for the position. Based on the foregoing, Defendants are entitled to summary judgment on Banks' promissory estoppel claims.

### D.     Banks' Unjust Enrichment Claim Fails

A claim of unjust enrichment requires a showing that (1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment. *See Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

Banks alleges that he conferred a benefit on Defendants "through the use of his name, credentials, expertise in the US auto industry, and minority status as an African American man in order for Defendants to promote their business and obtain approval from Honda and Toyota for the purchase of the Dealerships." (FAC ¶72). This far flung claim fails for a variety of reasons. First, Foundation did not receive approval from Toyota, so there is no benefit. Second, Foundation terminated Banks five (5) months prior to gaining approval from Honda. So, again, there could be no benefit. Third, Banks has not a produced a shred of evidence demonstrating what, if any, benefit he conferred or the value of the benefit. Accordingly, Defendants are entitled to summary judgment because Banks has not met his evidentiary burden and there is no genuine issue of material fact.

### E.     Defendants Did Not Violate Ohio Rev. Code § 4112.02

Ohio Rev. Code § 4112.02 states in relevant part that it is an "unlawful discriminatory practice" for an employer "because of the *** disability *** of any person, to discharge without just cause *** or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment." *Mattessich v. Weathersfield Twp.*, 2016-Ohio-458, 59 N.E. 3d 629, ¶36 (11th Dist.) (quoting R.C. 4112.02(A)). The term "disability" is defined as "a

physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." *Mattessich* at ¶36 (quoting R.C. 4112.01(A)(13)).

"To establish a prima facie case of disability discrimination under R.C. 4112.02, a plaintiff must demonstrate that: (1) he or she is disabled; (2) his or her employer took an adverse employment action against him or her at least partially based upon the disability; and (3) that he or she could safely and substantially perform the essential functions of his or her job despite the disability." *Hall v. Crawford County Job and Family Services*, 3rd Dist Crawford, 2022-Ohio-1358, 188 N.E.3d 1138, ¶11 (citations omitted). Even if a plaintiff sets forth each of these requisite prima facie elements, the employer may defeat the claim by demonstrating it took the adverse action for a legitimate, non-discriminatory reason.  *Hood v. Diamond Prod., Inc.*, 74 Ohio St. 3d 298, 302 (1996).  A defendant need only present "some evidence" in support of its reason; the burden of proof remains always with the plaintiff.  *Texas Dept. of Cmty. Affairs v. Burdine* (1981), 450 U.S. 248.  If the plaintiff cannot establish the proffered reason is pretextual, he cannot maintain a viable disability discrimination claim.  *Hood*, 74 Ohio St.3d at 302.  It is well-settled that the fact that a person has an impairment "is not alone sufficient to satisfy the entire statutory definition. In addition to being impaired, a person will only be considered 'disabled' if the impairment substantially limits her ability to perform one or more major life activities."  *Barreca v. Travco Behavioral Health, Inc*., 11th Dist. Trumbull No. 2013-T-0116, 2014-Ohio-3280.

### 1. Plaintiff's Deposition Testimony Precludes Him From Making the Requisite *Prima Facie* Showing That He Had A Disability

Banks first informed Foundation that he had MS on February 13, 2019. **Ex. H**. Banks admits that when he informed Foundation about his MS, he told Foundation that he had zero

symptoms. **Ex. H**. Further, Banks admitted that he informed Foundation that his MS didn't affect his work at all. **Ex. H**. Banks acknowledges that he never told anyone at Foundation about his potential symptoms due to MS because he didn't know what his symptoms were. SUF # 13. Banks admits that he doesn't believe the Giles (and therein Motorcars) knew that he had MS. SUF # 11. Banks admits he never had a conversation with Foundation in which he said his MS was affecting his work, and he admits he never revealed that he had any symptoms from MS. SUF # 15. Banks admits that while he was employed at Foundation, he didn't consider himself to have a disability, it wasn't until after his separation that he considered himself to have a disability. SUF # 16.

Banks alleges that the only reasonable accommodation he recalls requesting from Foundation was a reasonable schedule. SUF # 31, **Exhibit N**. Banks made this "request" to Foundation when he informed Foundation of the hours he planned on working. SUF # 32. Banks testified that he sent this revised working schedule because he was experiencing fatigue, but admits he doesn't think he ever told Foundation that he was experiencing fatigue. SUF # 9. Banks admits that he made this "request" for a revised working schedule almost a month *before* he told Foundation he was diagnosed with MS, but not experiencing symptoms. SUF # 10.

Based upon on the testimony above, Banks cannot establish a prima facie case for disability discrimination under Ohio Rev. Code § 4112.02.

## 2. Foundation terminated Banks' Employment for a legitimate, non-discriminatory reason

Assuming Banks could establish a prima facie case, Foundation must articulate a legitimate, non-discriminatory reason for the alleged adverse employment action. Foundation can articulate such a reason as discussed more in depth in the various other portions of this Motion. In summary, Foundation terminated Banks failed to show he could invest 25% into the dealership, threatening staff members, being subordinate in failing to follow the directions Foundation

instructed him to follow under Foundation's Management Agreement with Motorcars. SUF #'s 4, 5-7, 12, 17, 20, 23-24, 26, 29-30, 31, & 33.

### 3. Foundation's legitimate, non-discriminatory reason is not a pretext for disability discrimination

Banks cannot show that Foundation's legitimate, non-discriminatory reason provided for Banks' termination is pretextual disability discrimination. As discussed above, Banks' own testimony precludes such a finding because Banks admits that he informed Foundation that his alleged MS diagnosis didn't affect his work at all and he had zero symptoms. **Ex. H**. Banks admits there were no negative discussions about him having MS at all. SUF # 26. Banks told Foundation he was ready to go with his investment and could close in 60 days on the partnership, but never submitted a written loan application. SUF #'s 6, 12, & 29; *See* **Ex. J**. Accordingly, the Court should grant summary judgment in Defendants' favor as to Banks' disability discrimination claim against Defendants.

### F. Retaliation – Count V - ¶91-100

R.C. 4112.02(I) "prohibits 'any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.'" *Hall* at ¶29 (quoting *Stachura v. Toledo*, 6th Dist. Lucas No. L-19-1269, 2022-Ohio-345, 2022 WL 354609, ¶83). To establish a prima facie case of retaliation, a claimant must prove that '(1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action.' " *Hall* at ¶30 (citing Stachura at ¶ 84, quoting *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-

Ohio-6442, 879 N.E.2d 174, ¶ 13). Ohio courts have consistently held that requesting a reasonable accommodation ***does not*** constitute a protected activity under R.C. 4112.02(I). *Hall* at ¶34 (citing *Musil v. Gerken Materials, Inc.*, 6th Dist. Lucas No. L-19-1262, 2020-Ohio-3548, 2020 WL 3529662, ¶ 20. See *also Rorrer v. Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)). The Sixth District Court of Appeals reasoned that a request for an accommodation is "not participation in an investigation, proceeding, or hearing" or "opposition to an unlawful discriminatory practice." *Hall* at ¶34 (quoting *Musil* at ¶20).

Banks alleges that he engaged in a protected activity by requesting a reasonable accommodation to work certain days and hours. (FAC ¶93-96). First, Banks' claim fails because a request for an accommodation is "not participation in an investigation, proceeding, or hearing" or "opposition to an unlawful discriminatory practice." *Hall* at ¶34 (quoting *Musil* at ¶20). Second, Banks never made a request for accommodation. Banks testified that he told Kutchinski and Kramer on January 16th that he would be working only during certain hours of the week as opposed to the opening to close schedule previously discussed between Banks and Foundation. SUF # 8; **Ex. N**. Banks testifies in his deposition that the reason he "requested" these hours was because he was experiencing fatigue, however, Banks admits he never told Foundation that he was experiencing fatigue. SUF # 9. Furthermore, Banks admits that this "request" for different hours was made almost a month prior to to Banks informing Foundation that he had been diagnosed with MS. SUF #'s 10 & 25. Lastly, Banks repeatedly testifies that his diagnosis with MS didn't affect his work, he had zero symptoms, and that he didn't even know what his symptoms were; therefore, Foundation could not retaliate against Banks on the basis of his request for a reasonable accommodation for his alleged disability. SUF #'s 8-11, 13-16, 25-28, & 31-35, *See* **Ex. H**. Based

upon the foregoing, Banks cannot establish any of the elements for a prima facie case for retaliation, and therefore summary judgment on this claim should be granted.

**G.** **Kutchinski, Kramer, Chuck Gile, and Trevor Gile Did Not Violate Ohio Rev. Code § 4112.02(j)**

In order to aid and abet, an individual must actively participate in, or otherwise facilitate, another's discriminatory act in violation of R.C. 4112.02. *Johson-Newberry v. Cuyahoga County Child and Family Services*, 8th Dist. Cuyahoga, 2019-Ohio-3655, 144 N.E.3d 1058, ¶21 (citing *Pittman v. Parillo*, 6th Dist. Lucas No. L-16-1140, 2017-Ohio-1477, ¶25). First and foremost, this claim fails because Banks cannot establish that he had a disability and was subjected to disability discrimination. *Martcheva v. Dayton Board of Education*, 2nd Dist. Montgomery, 2021-Ohio-3524, 179 N.E.3d 687, ¶74-76 (citing *Weinrauch v. Sherwin-Williams Co.,* N.D.Ohio No.1:18-cv-01696, 2019 WL 3007031, *14 (July 10, 2019)).

Banks admits in his deposition testimony that the Giles did not know about his alleged disability, and the Giles and Motorcars were not a party to his Pay Plan with Foundation. SUF #'s 11, 18, & 35; *See* **Ex. A**. There is no evidence to support that the Giles instructed Foundation to impose longer working hours for Banks as alleged in ¶105 of Banks' active Complaint. Kutchinski and Kramer, on the Foundation side of this claim, equally did not aid or abet the alleged discrimination. Kutchinski and Kramer knew about Banks' alleged MS diagnosis as of February 13th, however, Banks assured them his diagnosis did not affect his work, nor was he experiencing symptoms. SUF #'s 13-15, & 26-27; **Ex. H**. To the extent Banks is asserting he made a reasonable request for accommodation as it relates to his working hours, Banks admits he made such "request" almost a month before he told Kutchinski and Kramer that he had been diagnosed with MS. SUF #'s 8-10 & 31-33. Therefore, Banks' claim for violation of R.C. 4112.02(J) by C. Gile, T. Gile,

Kutchinski, and Kramer should be dismissed and the Defendant's Motion for Summary Judgment on this claim should be granted.

### H.    Banks Cannot Prove Fraud

Banks' fraud claim is just a repackaging of his claims. Banks maintains that the same conduct it describes as fraud also constituted a breach of contract and promissory estoppel. Ohio courts routinely reject fraud claims based on alleged breach of contractual duties. *See e.g*., *Textron Fin. Corp. v, Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N,E.2d 1261 (1996) ("a breach of contract does not create a tort claim").

Defendants are also entitled to summary judgment because Banks cannot prove the necessary elements and the claims fail for lack of specificity under Civ.R. 9(b). The elements of of fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Friedland v. Lipman*, 68 Ohio App. 2d 255, 429 N.E.2d 456 (Ohio St. App. 1980) (syllabus).

Banks alleges that Defendants made numerous false representations, Defendants had knowledge of the falsity, and Defendants made the statements with the intent of misleading Banks. First, Banks alleges that Defendants represented that he "would be employed as General Manager of Motorcars Honda regardless of whether the purchase of both Dealerships closed." (FAC ¶ 109). Banks also alleges that Defendants represented that "Foundation was an Equal Opportunity Employer and that it complies with all applicable employment laws." (FAC ¶ 112). Banks failed to allege who made this representation and when and therefore lacks specificity. Banks also failed to present evidence of this representation or that it was made with the intent to mislead.

23

Second, Banks alleges that Defendants represented that he "would have the opportunity to buy a 25% interest in the partnership after the Dealerships purchase closed." (FAC ¶ 110). Again, Banks was terminated before Foundation closed on the Honda store and it never closed on the Toyota store. However, if both purchases closed and Banks was employed at the time of close, the Pay Plan contractually obligated him to purchase a 25% interest. This was a contractual duty. Third, Banks alleges that Defendants represented that he "would be reimbursed for his moving and living expenses in the amount of $20,000 once he relocated to Cleveland." (FAC ¶ 111). This also was a contractual term contained in the Pay Plan that never took effect because the Dealerships never closed and Banks was terminated.

Defendants are entitled to summary judgment on Banks' fraud claim because there are no genuine issues of material fact.

## IV. CONCLUSION

Based on the record facts, Banks is unable to sustain his burden of demonstrating that Defendants breached any contract, broke any promises, or its actions with respect to any aspect of his employment constituted discrimination on the basis of his disability.  As a result, Defendants respectfully request that summary judgment be granted in its favor with respect to the claims in Banks' First Amended Complaint.

Respectfully submitted,

*/s/ Matthew C. Miller*
**ROBERT A. POKLAR (0015685)**
*Rpoklar@westonhurd.com*
**MATTHEW C. MILLER (0084977)**
*MMiller@westonhurd.com*
**Weston Hurd LLP**
1300 East 9th Street, Suite 1400
Cleveland, OH  44114-1862
(216) 241-6602 / (216) 621-8369 (fax)

-and-

**DONALD W. GOULD II\***
(TX Attorney Registration #08234250)
**AARON PANNELL\***
(TN Attorney Registration #036147)
**Johnson DeLuca Kurisky & Gould P.C.**
4 Houston Center
1221 Lamar Street, Ste. 1000
Houston, TX  77010
dgould@jdkglaw.com
apannell@jdkglaw.com
*\* admitted pro hac vice*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

A copy of the foregoing was served via the Court's electronic filing system on February 28, 2023 to all counsel of record.

*/s/ Matthew C. Miller*
**MATTHEW C. MILLER (0084977)**