## MANAGEMENT AND OPERATIONS AGREEMENT

This MANAGEMENT AND OPERATIONS AGREEMENT (this "Agreement") is made as of January 30, 2019, effective as of February 1, 2019 (the "Effective Date"), by and between International Securities Limited (the "Toyota Dealership") and Motor Cars, Inc. (the "Honda Dealership"), both organized under the laws of the State of Ohio (collectively the "Company"), and FA OH TYTA, LLC (the "Toyota Operator") and FA OH HND, LLC (the "Honda Operator"), both Delaware limited liability company's (collectively the "Manager").

## RECITALS

WHEREAS, Company desires to engage Manager to manage business operations at the Dealerships named Motorcars Honda and Motorcars Toyota (collectively referred to as the "Business"); and

WHEREAS, Manager desires to retain, operate and manage the Business on the terms set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, representations and warranties contained herein, and intending to be legally bound hereby, the parties hereto hereby agree as follows:

1. Appointment of Manager; Relationship of Company and Manager.

Manager shall provide management and operational support services to the Company, as hereinafter provided. Manager, at all times, shall be independent of the Company. Nothing contained herein shall be deemed to make or render the Company a partner, co-venturer or other participant in the business or operations of the Manager, or in any manner to render Company liable, as principal, surety, guarantor, agent or otherwise for any of the debts, obligations or liabilities of Manager. Similarly, nothing contained herein shall be deemed to make or render the Manager a partner, co-venturer or other participant in the business or operations of the Company, or in any manner to render Manager liable, as principal, surety, guarantor, agent or otherwise for any of the debts, obligations or liabilities of Company arising prior to the Effective Date.

2. Management Services.

Subject to the other provisions of this Agreement, including, but not limited to, those provisions set forth in Section 4, Section 11, Section 12(f), and Section 12(h), commencing on the date of this Agreement, Manager will provide, supply and render such management and operational support services as are necessary to provide service to the Company and, as more specifically described below, shall:

> (a) Administer and supervise all of the finances of the Business, including but not limited to payroll, taxes, accounting, bookkeeping, record keeping, managing of accounts payable and accounts receivable, banking, financial records and reporting



EXHIBIT

B

functions as they pertain to the business of the Company, with the power to make such changes therein, in its sole discretion.

(b) Select and employ all personnel necessary to service the Business of the Company.

(c) Supervise and control the purchase of all materials and supplies, and acquire, lease, dispose of and repair equipment and facilities necessary to provide safe and adequate service to the business of the Company.

(d) Manage all costs and all pricing on a customer-by-customer basis, estimate all costs on new contracts, bid on and enter into new contracts, and control all costs for contracts in progress.

(e) In concert with the Company, commence, defend and control all legal actions, arbitrations, investigations and proceedings that arise, whether during or after the term of this Agreement, due to events occurring in connection with the business of the Company during the term of this Agreement.

(f) Maintain the assets of the Company in good repair, order, and condition, normal and reasonable wear and tear excepted.

(g) Pay all amounts necessary to maintain the Company in good standing with its transfer agent and the state of its incorporation, as well as any fees for licenses or permits necessary to carry on business as it is currently being conducted.

Notwithstanding the foregoing, the Manager shall not have the authority, without the express written consent of the Company, to purchase in the name of the Company, or for use by the Company in the Business, any assets outside the ordinary course of business, or incur any indebtedness outside the ordinary course of business.

3. Obligations of the Company.

Prior to the expiration of this Agreement, the Company shall provide the Manager with true and correct information relating to all functions for which the Manager has responsibility hereunder, and shall not take any action to interfere with the Manager's performance of its duties hereunder.

4. Additional Agreements of the Manager.

The Manager agrees that at all times during the term of this Agreement it shall:

(a) Do nothing, and permit nothing to be done, which will or might cause the Company to operate in an improper or illegal manner.

(b) Not cause a default in any of the terms, conditions, and obligations of any of the contracts and other agreements of the Company, including but not limited to Company's agreements with each franchisor.

(c) To the extent permissible by law, maintain in full force its licenses and permits in the State of Ohio and comply fully with all laws respecting its formation, existence, activities, and operations.

(d) Allow the Company and the employees, attorneys, accountants and other representatives of the Company, full and free access to its books and records, and all of the facilities of the Company relating to the Business.

(e) Manager agrees to compensate the Company during the term of this Agreement based on the following:



(f) Conduct its operations as follows:

i. Manager shall dispose of every used vehicle on the 60th day it is in Company's inventory, unless Manager has a written agreement with Company's President with respect to a particular used vehicle.

ii. Manager shall not allow the quantity of Company's inventory of parts and accessories that are non-returnable or which are obsolete (held in stock for more than 12 months) to increase between the Effective Date and the Expiration Date.

iii. Manager shall not pre-register any new motor vehicle as sold with any manufacturer of such motor vehicle.

iv. Manager shall not increase the number of leased vehicles or loaner vehicles, as defined in the Purchase Agreement, from the Effective Date without Company's prior written approval.

v. Manager shall first use funds received for the purchase of a motor vehicle to pay off the amount of the floor plan loan associated with such vehicle and shall further never allow the Company to be sold out of trust with any of its floor plan lenders under the terms of each such floor plan lending agreement.

vi. Manager shall use Company's dealer management system ("DMS") provider and shall not take any action to change DMS providers or otherwise terminate Company's agreement with its DMS provider.

vii. Manager shall pay each of Company's vendors in the ordinary course in accordance with Company's past practices.

viii. Manager shall employ personnel only on an at-will basis.

Page 3 of 14

ix. Manager shall not hire any management employee without the prior written consent of Matt Gile (Toyota) or Trevor Gile (Honda) respectively, which consent shall not be unreasonably withheld.

x. Manager shall maintain all of Company's employee benefit plans including health insurance, retirement plans, and other employee benefit plans as they exist on the Effective Date.

xi. Manager may not terminate any of Company's employees except with the prior written agreement of Matt Gile (Toyota) and Trevor Gile (Honda) respectively.

xii. Manager shall not modify the pay plans of any of Company's personnel as they exist on the Effective Date except with the prior written agreement of Matt Gile (Toyota) and Trevor Gile (Honda) respectively.

xiii. Manager shall take all reasonable actions to ensure that the Company receives funding of each contract in transit within at least ten (10) days of sale of the applicable vehicle or Manager shall reacquire such vehicle.

xiv. Manager will conduct all of its accounting in accordance with Generally Accepted Accounting Principles appropriate for auto dealership operations (GAAP), including but not limited to properly reporting all asset and liability accounts of Company on a monthly basis.

xv. Manager shall timely prepare each manufacturer's form of operating worksheet and financial statement in accordance with GAAP each month (the "Financial Statements"). Manager shall provide the same to Matt Gile (Toyota) and Trevor Gile (Honda) and each manufacturer no later than the tenth (10th) day of the following month.

xvi. Manager shall not enter into any contracts with terms longer than 30 days without the prior written permission of Matt Gile (Toyota) or Trevor Gile (Honda).

xvii. Manager shall incur no long-term debt on behalf of Company.

xviii. Manager shall continue to collect Company's receivables arising prior to the Effective Date and apply all payments received first to Company's oldest receivable of the payor.

xix. Manager shall not purchase on behalf of Company or cause Company to purchase any individual asset exceeding ten thousand dollars ($10,000.00).

xx. Not transfer any Company-owned assets to any affiliate of Manager without the prior written consent of Company.

xxi. Not change any Company passwords whatsoever without the prior written consent of Matt Gile (Toyota) or Trevor Gile (Honda) and in any case shall provide Matt Gile (Toyota) and Trevor Gile (Honda) with copies of any new passwords.

(g) Do nothing, and permit nothing to be done, which will or might harm the reputation of the Company.

(h) Shall conduct all Company communications with a manufacturer (e.g. Toyota, Honda) exclusively through Matt Gile (Toyota) and Trevor Gile (Honda) and Manager shall not communicate with any representative or agent of a manufacturer with respect to the management of Company—if a manufacturer representative contacts Manager directly, Manager shall direct such representative to Matt Gile (Toyota) or Trevor Gile (Honda).

5. General and Administrative Activities.

Throughout the term of this Agreement, Manager shall  conduct all of the "general and administrative" (as such term is used in accounting practice) activities of the Business, including, but not limited to, all accounting, bookkeeping, record-keeping, paying, receiving and other fiscal or financial activities, in substantially the same manner as Company conducted the same prior to the Effective Date. Manager shall be responsible for any of its own "general and administrative" activities in addition to those conducted by the Company prior to the Effective Date and such costs shall not be borne by or attributed to Company.

6. Location.

During the term of this Agreement, Manager shall manage the business of the Company exclusively from the Company dealerships in Cleveland Heights, Ohio and shall not move such operations from the location or facilities used by Company immediately prior to the Effective Date.

7. Compensation.



8. Term of Agreement; Termination of Rights.

(a) The term of this Agreement shall commence on its execution, and expire, unless otherwise terminated or extended in writing hereunder, on the earlier of (i) ninety (90) days from the Effective Date or (ii) the Closing of the transaction outlined in the asset purchase agreements between Company and Manager (the "Purchase Agreement") dated December 14, 2018. Upon termination of this Agreement, Manager shall immediately return all books and records, including electronic and physical copies thereof, relating to the operation of the Business to the Company; provided, however, that if the parties close under the Purchase Agreement, Manager shall be entitled to retain records as provided in the Purchase Agreement.

(b) Company may, at its option, upon ten (10) days' written notice terminate this Agreement (if such default is not cured within such ten (10) day period or such longer period as required to effect a cure if a cure is commenced within ten (10) days and diligently prosecuted): (i) if Company determines that Manager has violated any material provision of this Management Agreement; (ii) if Manager shall violate or be in material breach of any provision, representation, warranty,

covenant or undertaking herein; or (iii) if Manager or any affiliate of Manager, including shareholder, member, officer, manager, parent company or subsidiary) (a) makes an assignment for the benefit of creditors, (b) is adjudicated a bankrupt, (c) files or has filed against it any bankruptcy, reorganization, liquidation or similar petition or any petition seeking the appointment of a receiver, conservator or other representative, or (d) proposes a composition arrangement with creditors.



(d) The date on which this Agreement is terminated pursuant to Section 8(a), Section 8(b) or Section 8(c) is hereinafter referred to as the "Expiration Date."

(e) If the parties under the Purchase Agreement do not Close under the Purchase Agreement on the Expiration Date, Company shall be entitled to offset any damages under this Agreement against (i) Manager's compensation set forth in Section 7(a) and (ii) the Deposit, as defined in Section 1 of each Purchase Agreement. Company's right of offset hereunder does not constitute an election of remedies, is not Company's exclusive remedy with respect to this Agreement, and is additional to any other remedies otherwise available to Company in equity, law, or under the terms of this Agreement.

9. Indemnification and Insurance.

(a) Manager shall indemnify, defend and hold harmless Company and its affiliates, their respective shareholders, members, officers, managers, directors, employees, and agents, against and in respect of any and all losses, claims, damages, causes of action, actions, obligations, liabilities, deficiencies, suits, proceedings, actual out-of-pocket obligations and expenses (including cost of investigation, interest, penalties and reasonable attorneys' fees) (collectively, "Losses") arising out of or due to the operation of the Business by Manager, including any actions by it or its affiliates, agents, servants and/or employees, after the Effective Date.

(b) Company shall indemnify, defend and hold harmless Manager and its affiliates, their respective shareholders, members, officers, managers, directors, employees, and agents, against and in respect of any and all Losses arising out of or due to the operation of the Business by Company, its affiliates, agents, servants and/or employees prior to the Effective Date.

(c) If a party entitled to indemnification (the "Indemnitee") receives notice of any claim or the commencement of any action or proceeding with respect to which a party is obligated to provide indemnification (the "Indemnifying Party") pursuant to subsections (a) and (b) of this Section, the Indemnitee shall promptly, and in each case within at least three (3) business days of Indemnitee's discovery of the claim, give the Indemnifying Party notice thereof (Indemnification Notice"). Such Indemnification Notice shall be a condition precedent to any liability of the Indemnifying Party

under the provisions for indemnification contained in this Agreement. Except as provided below, the Indemnifying Party may compromise, settle or defend, at such Indemnifying Party's own expense and by such Indemnifying Party's own counsel, any such matter involving the asserted liability of the Indemnitee; provided, however, that no settlement or compromise may include an acknowledgment of wrongdoing or liability by the Indemnitee without such Indemnitee's express written consent. In any event, the Indemnitee, the Indemnifying Party and the Indemnifying Party's counsel shall cooperate in the compromise of, or defense against, any such asserted liability. If the Indemnifying Party provides the Indemnitee a defense to a third party claim at the Indemnifying Party's cost with a qualified attorney, Indemnitee may participate and/or monitor the defense with an attorney of the Indemnitee's selection (at the Indemnitee's own expense). Provided that the Indemnifying Party pays for the full cost of the settlement of any claim, the Indemnifying Party may settle any claim without the consent of the Indemnitee so long as no such settlement includes an acknowledgment of wrongdoing or liability by the Indemnitee. If the Indemnifying Party chooses to defend any claim, the Indemnitee shall make available to the Indemnifying Party any books, records or other documents within its control that are necessary or appropriate for such defense.

(d) Company shall maintain in full force and effect all such policies of commercial, property, workers' compensation, automobile, general liability insurance and other appropriate coverage as Company had in effect as of the Effective Date hereof with respect to the Business, operations, properties and employees of the Company. During the term of this Agreement, Manager shall be listed as an additional insured on all such policies. Manager shall not modify the provisions of Company's insurance policies and shall cause Company to pay, out of Company's operations as conducted by Manager, all payments under such policies in the ordinary course to maintain the same throughout the term of this Agreement.

10. <u>Conditions to Closing under Purchase Agreement</u>. As consideration to induce Company to enter into this Agreement, Manager, on behalf of itself as Buyer under the Purchase Agreement, hereby waives any and all conditions to closing under the Purchase Agreement except Buyer's express rights under the following sections of each respective Purchase Agreement: (a) Section 9(a) "Manufacturer Approval"; (b) Section 9(b) "Performance; Accuracy & Authorization"; (c) Section 9(c) "Entire Transaction"; (d) Section 9(h) "Closing Memorandum & Bill of Sale; etc."; and (e) Section 9(i) "Toyota/Honda Closing".

11. <u>Company Losses</u>.

(a) On or before the earlier of the 15th of each month beginning with March 10, 2019 or the Expiration Date, Manager shall reimburse Company, from Manager's own funds, for any losses the Company sustained for the immediately prior month or prior to the Expiration Date. Manager and Company's respective Certified Public Accountants ("CPAs") shall calculate the losses each month in accordance with GAAP. If Manager and Company's CPAs cannot agree on the amount of losses, they shall mutually select a third party CPA who will calculate the losses and the determination of such third party CPA shall be final and definitive.

(b) If this Agreement terminates prior to Buyer closing under the Purchase Agreement, then Manager shall pay Company, in immediately available funds, an amount equal to any losses

sustained by Company between the Effective Date and the Expiration Date (calculated in accordance with GAAP) that have not previously been funded by the Buyer.

12. Additional Provisions.

(a) This Agreement sets forth the entire understanding and agreement among the parties hereto with reference to the subject matter hereof and may not be modified, amended, discharged or terminated except by a written instrument signed by the parties hereto.

(b) This Agreement shall be governed by, and construed in accordance with, the laws of the State of Ohio applicable to agreements made, delivered and to be performed within such State.

(c) This Agreement may not be assigned by Company or Manager, except that Manager may in its sole discretion assign this Agreement to a properly licensed affiliate performing similar types of services wherein the majority owner of Manager is also the Majority owner of such affiliate. Upon any assignment, Manager shall remain primarily liable and jointly and severally liable to Company for performance of Manager's duties herein.

(d) All of the terms and provisions of this Management Agreement shall be binding upon, inure to the benefit of, and be enforceable by each of the parties hereto and their respective successors and assigns. Except for affiliates of Company and Manager and their respective shareholders, members, officers, managers, directors, employees and agents, no person other than the parties hereto shall be a third party beneficiary of this Agreement or have any rights hereunder.

(e) No failure on the part of any party hereto to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or remedy hereunder preclude any other or further exercise thereof or the exercise of any other rights, power, or remedy.

(g) If this Agreement terminates without the parties closing under the Purchase Agreement, for a period of twelve (12) months, Manager, and any affiliate of Manager, shall not, directly or indirectly, solicit, request, induce, assist or encourage any employee of Company (including any employee hired after the Effective Date) to terminate his or her employment with Company.

(h) No party shall make any publicity release or announcement concerning this Agreement, or the transactions contemplated hereby without the advanced approval of the form and substance thereof by the other parties.

**[*Signature Page to Management Agreement*]**

IN WITNESS WHEREOF, the parties have executed this Management Agreement to be effective as of the Effective Date.

Signed this _____ day of January, 2019.

MANAGER:

FA OH TYTA, LLC

By: _____
Name: Kevin Kutschinski
Title: Manager

FA OH HND, LLC

By: _____
Name: Kevin Kutschinski
Title: Manager

COMPANY:

International Securities Limited
dba: Motorcars Toyota

By: _____
Name: Matt Gile
Title: Manager

Motor Cars, Inc.
dba: Motorcars Honda

By: _____
Name: Trevor Gile
Title: President

**Page 10 of 14**